# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. ___2:24-CV-136-RWS |
| *ex rel.* ABC, | |
| *Plaintiff/Relator*, | |
| v. | |
| XYZ, | |
| *Defendants.* | |

## *QUI TAM* COMPLAINT

### I.  INTRODUCTION

1.  This is a *qui tam* case, filed on behalf of the federal government, seeking to recover $1.3 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that they had fewer than 300 employees. That loan was later forgiven, and the federal government paid the bill.

2.  The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received

additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3.      In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4.      The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5.      Defendants falsely certified to the SBA that they had 287 employees. As a direct result of that false statement, Defendants obtained a Second Draw PPP loan of $1,292,600.00, which was later forgiven.

6.      Relator is an outside investigative company that detected Defendants' fraud by reviewing the Forms 5500 that Defendants' employees' 401(k) plan filed with the Department of Labor. Those forms, combined with other evidence, indicated that the 401(k) plan had more than 300 "active participants" in each of 2019, 2020, and 2021. Because an "active participant" is an employee, these forms'

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.
[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

representations to the Department of Labor give the lie to Defendants' false statement to the SBA that it employed fewer than 300 persons.

## II. THE PARTIES

7.    Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8.    Defendant Buhler Quality Yarns Corporation ("Buhler") is a Georgia corporation with its principal place of business in Jefferson, Georgia.

9.    Defendant Samil Spinning Co. Ltd ("Samil Spinning") is a South Korean corporation with its principal place of business in Gyeongsangbuk, South Korea.

## III. JURISDICTION AND VENUE

10.    This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

11.    Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

12.    Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendants are "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

13.    The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No.

99-345, at 1 (July 28, 1986).

14.    A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

15.    Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

16.    In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

17.    Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

18.    No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

19.    The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

20.     The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

22.     The FCA defines the term "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

23.     The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

24.     The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601

(2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

25.    As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

26.    False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.    NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

27.    On information and belief, no "public disclosure" has been made of Defendants' false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

28.    On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

29.    Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

30.     Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendants' Form 5500 disclosures and other statements, and (b) Defendants' false certification for the Second Draw Loan.

31.     Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.    THE SECOND DRAW PPP LOAN PROGRAM

32.     To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020." [3] 15 U.S.C. 636(a)(37)(A)(iv).

33.     The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.
[4] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

34.    The SBA'S FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

35.    The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

36.    The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. § 121.30(f)."[8]

37.    That regulation defined "affiliate" broadly. The term includes "affiliation based on ownership": "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or

---

[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[9]

Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[10]

Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[11]

Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an

---

[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[11] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[12]

Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[13]

38.    The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

39.    The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

40.    The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

41.    The SBA Form 2483-SD also required the applicant's authorized

---

[12] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[13] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

42.     The SBA guaranteed 100% of the outstanding balance of Defendants' Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII.  DEFENDANTS FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A.  BACKGROUND

43.     Upon information and belief, Defendant Samil Spinning Co. Ltd ("Samil Spinning") is a corporation registered in South Korea[14] and headquartered at 539, Iryeon-ro, Jillyang-eup, Gyeongsan, Gyeongsangbuk 38495, South Korea.[15]

44.     Samil Spinning can be validly served with process at 1881 Athens Hwy, Jefferson, GA 30549-5836.[16]

45.     Upon information and belief, Defendant Buhler Quality Yarns

---

[14] Kompass, Samil Spinning Co. Ltd, https://kr.kompass.com/c/samil-spinning-co-ltd/kr007686/; D&B Hoovers, Samil Spinning Co. Ltd.

[15] Kompass, Samil Spinning Co. Ltd, https://kr.kompass.com/c/samil-spinning-co-ltd/kr007686/; D&B Hoovers, Samil Spinning Co. Ltd.

[16] Kompass, Samil Spinning Co. Ltd, https://kr.kompass.com/c/samil-spinning-co-ltd/kr007686/; D&B Hoovers, Samil Spinning Co. Ltd.

Corporation ("Buhler") is a corporation registered in Georgia[17] and headquartered at 1881 Athens Hwy, Jefferson, GA 30549-5836.[18]

46.    Buhler can be validly served with process at 1180 West Peachtree Street NW, Suite 2100, Atlanta, GA 30309.

47.    Samil Spinning is a cotton spinning company; Buhler is an American yarn manufacturer supplying fine-count yarns.[19] Samil Spinning acquired Buhler in 2017.[20]

48.    Samil Spinning's domestic and foreign affiliates include Buhler.

49.    On information and belief, the Samil Spinning affiliates named in the foregoing paragraphs qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

### B.    FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN

50.    In 2020, Buhler submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $1,292,600.00.

51.    On or about February 18, 2021, the U.S. government forgave 100% of Buhler's First Draw PPP Loan, including interest, in the amount of $1,303,330.35.

---

[17] Georgia, Division of Corporations, Buhler Quality Yarns Corporation (for ID No. K532089).
[18] Georgia, Division of Corporations, Buhler Quality Yarns Corporation (for ID No. K532089).
[19] Yarns and Fibers News Bureau, Samil Spinning acquires an American yarn manufacturer Buhler Quality Yarn (Mar. 23, 2017), https://www.yarnsandfibers.com/news/textile-news/samil-spinning-acquires-an-american-yarn-manufacturer-buhler-quality-yarn/.
[20] Yarns and Fibers News Bureau, Samil Spinning acquires an American yarn manufacturer Buhler Quality Yarn (Mar. 23, 2017), https://www.yarnsandfibers.com/news/textile-news/samil-spinning-acquires-an-american-yarn-manufacturer-buhler-quality-yarn/.

52.     In 2021, Samil Spinning applied for a Second Draw PPP loan.

53.     Samil Spinning submitted its Borrower Application form, SBA Form 2483-SD, to Shinhan Bank America in New York, New York.

54.     On its Form 2483-SD, Samil Spinning listed its address as 1881 Athens Hwy, Jefferson, GA 30549-5836.

55.     On its SBA Form 2483-SD, Samil Spinning represented that it and its affiliates had 287 employees—narrowly under the 300-employee limit needed to be eligible to apply.

56.     Samil Spinning's SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. Samil Spinning and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

57.     Samil Spinning deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Samil Spinning signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

58.     On or about February 13, 2021, Samil Spinning was approved for a Second Draw PPP loan in the amount of $1,292,600.00 by lender Shinhan Bank America.

59.     The U.S. government paid lender Shinhan Bank America a lender's

processing fee of 3% of the $1,292,600.00 loan, in the amount of $38,778.00.[21]

60.     On or about December 21, 2021, the U.S. government forgave 100% of Samil Spinning's Second Draw PPP Loan, including interest, in the amount of $1,303,365.76.

### C.     EVIDENCE OF MORE THAN 300 EMPLOYEES

61.     Buhler maintained a 401(k) retirement plan for its employees in each of 2019, 2020 and 2021 (the "Buhler Employee Benefits Plan").

62.     The Buhler Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer.[22] That employer was Buhler.[23]

63.     In 2019, 2020, and 2021 the Buhler Employee Benefits Plan had the following legal name: Buhler Quality Yarns Corporation Welfare Benefit Plan.

64.     Each year, the Buhler Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the Buhler Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed Buhler that "active participants" are

---

[21] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[22] The plan's Forms 5500 for 2019, 2020, and 2021 all check the box in section A attesting that it was "a single-employer plan."

[23] The plan's Forms 5500 for 2019, 2020, and 2021 all list the "employer" as "Buhler Quality Yarns Corporation." All three years' Forms 5500 also give the same Employer Identification Number. The address is listed as 1881 Athens Street, Jefferson, GA 30549.

"individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[24]

65.    In 2019, the Buhler Employee Benefits Plan reported 112 active participants at the start and 119 active participants at the end of the year.[25]

66.    In 2020, the Buhler Employee Benefits Plan reported 119 active participants at the start and 84 active participants at the end of the year.[26]

67.    In 2021, the Buhler Employee Benefits Plan reported 81 active participants at the start and 75 active participants at the end of the year.[27]

68.    Upon information and belief, the "active participants" listed in Buhler's Forms 5500 was significantly less than Buhler's true numbers of domestic and foreign employees.

69.    The number of "active participants" reported in the Buhler Employee Benefits Plan excluded multiple categories of employees, including employees from Samil Spinning. Upon information and belief, foreign employees are typically not eligible to participate in U.S. 401(k) plans under the terms of those plans.

70.    Upon information and belief, the number of "active participants" reported in the Buhler Employee Benefits Plan excluded the total number of employees of Buhler's foreign affiliates.

---

[24] Instructions for Form 5500 (2021).
[25] Form 5500, Buhler (2019).
[26] Form 5500, Buhler (2020).
[27] Form 5500, Buhler (2021).

71.    In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

72.    Other databases also contradict the representation that Buhler made in its SBA Form 2483-SD that it and its affiliates only had 287 employees. For instance, as of May 10, 2024, D&B Hoovers reports that Samil Spinning had 2,515 employees across its company and affiliates.[28]

73.    Most strikingly, Buhler itself represents that it employs "300 committed employees."[29]

74.    On information and belief, Buhler's payroll records from 2019, 2020, and 2021 will confirm what Buhler always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

75.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

76.    Defendants    violated    31    U.S.C.    § 3729(a)(1)(A)    by    knowingly

---

[28] D&B Hoovers, Samil Spinning Co., Ltd.
[29] Buhler Yarn, About, https://buhleryarn.com/about-our-company/.

presenting and/or causing to be presented to the lender a claim for approval of a Second Draw PPP loan.

77.    Defendants' knowingly false claim on its SBA Form 2483-SD was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

78.    But for Defendants' knowingly false claim, the lender would not have issued the loan and the SBA would not have forgiven it.

79.    The Second Draw PPP loan that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

80.    The Second Draw PPP loan that Defendants obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

81.    The Government later reimbursed the lender 100% of the amount of Defendants' Second Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

82.    Relator repeats, realleges, and incorporates the allegations set forth in

the paragraphs above as though fully set forth herein.

83.     Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false record and statement—namely, its SBA Form 2483-SD and its included certifications—to support a false claim submitted to the lender for approval of Second Draw PPP loan.

84.     Defendants' knowingly false record and statement was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

85.     But for Defendants' knowingly false record and statement, the lender would not have issued the loan and the SBA would not have forgiven it.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby

demands a trial by jury.

Date: June 14, 2024          Respectfully submitted,

_____

J. Matthew Maguire, Jr,
Georgia Bar No. 372670
James D. Dean
Georgia Bar No. 696656
**PARKS, CHESIN & WALBERT, P.C.**
1355 Peachtree Street NE
Suite 2000
Atlanta, Georgia 30309
Telephone: (404) 873-8000
mmaguire@pcwlawfirm.com
jdean@pcwlawfirm.com

Stephen Shackelford (*to seek pro hac vice*)
New York State Bar # 5393657
Steven M. Shepard (*to seek pro hac vice*)
New York State Bar # 5291232
Alicia Lai (*to seek pro hac vice*)
New York State Bar # 5929112
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com
alai@susmangodfrey.com

*Attorneys for Plaintiff/Relator*